**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| JAMEILA STEWART,<br><br>        Appellant,<br><br>        v.<br><br>SEATTLE CHILDREN'S HOSPITAL,<br><br>        Respondent. | No. 88292-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Jameila Stewart appeals the trial court's dismissal of her lawsuit against Seattle Children's Hospital, which was dismissed on judicial estoppel grounds and for insufficient service of process. We affirm.

I       FACTS

On January 16, 2025, Stewart sued Seattle Children's asserting claims of negligence, intentional infliction of emotional distress, and breach of hospital policy. The complaint was based on an incident involving hospital security that occurred while Stewart's minor son was a patient at the hospital three years earlier.

On January 28, 2025, Corporation Service Company (CSC), the registered agent for Seattle Children's, received Stewart's summons and complaint by certified mail. CSC e-mailed the documents to Seattle Children's the next day.

Seattle Children's moved to dismiss the complaint under CR 12(b)(5) and (6) alleging that there was insufficient service of process and that Stewart failed to state a claim upon which relief could be granted.

After moving to dismiss, Seattle Children's learned that, on October 26, 2024, Stewart had filed a petition for chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Washington. In her bankruptcy schedules, Stewart did not list her claims against Seattle Children's as an asset. The bankruptcy schedules required that Stewart disclose any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment." Stewart checked "No" to having any such claims. Stewart also listed Seattle Children's as one of the creditors seeking to discharge $1035.42 of medical debt. Stewart checked "No" when asked if this debt was subject to potential offset. The bankruptcy court issued an order discharging Stewart's debts on January 27, 2025, and the case closed on January 30, 2025.

Seattle Children's then moved for summary judgment arguing that Stewart's claims were barred by the doctrine of judicial estoppel because Stewart certified in bankruptcy proceedings that she did not have any claims against Seattle Children's. After Seattle Children's filed its motion, Stewart sought to reopen her bankruptcy proceedings and disclose her claims against Seattle Children's.

The trial court heard oral argument and dismissed Stewart's claims for insufficient service of process and on judicial estoppel grounds. The trial court concluded that Stewart's service via certified mail to CSC did not comply with the

statutory requirements under RCW 4.28.080(9)[1] and RCW 23.95.450(1).  The trial court also concluded that judicial estoppel precluded Stewart's claims because of her failure to disclose them during the bankruptcy proceeding.  The trial court reasoned that the reopening of the bankruptcy proceeding does not prevent the application of judicial estoppel to Stewart's claims.  Stewart's motion for reconsideration was denied.

Stewart appeals.[2]

## II        ANALYSIS

### A        Judicial Estoppel

Stewart first argues that the trial court erred in applying judicial estoppel to her claims.  We disagree.

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'"  Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting Bartley-Williams v. Kendall, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)).  Courts apply judicial estoppel to protect the integrity of the courts and to minimize inconsistency, duplicity, and waste of time.  In re Committed Intimate Relationship of Amburgey, 8 Wn. App. 2d 779, 788, 440 P.3d 1069 (2019).  But the doctrine is not designed to protect litigants.  Amburgey, 8 Wn. App. 2d at 788.

---

[1] The trial court cited to former RCW 4.28.080(9) (2015) which was in effect at the time.  RCW 4.28.080(9) was later amended in July 2025.

[2] Approximately two weeks after filing her opening brief in this court, and more than seven months after the trial court dismissed her action, Stewart moved the trial court to vacate its order of dismissal.  The trial court denied Stewart's motion and her subsequent motion for reconsideration.  We deny Stewart's motion to amend her notice of appeal to include the trial court's post-dismissal orders.  We also deny Seattle Children's motion to strike.

There are three factors to guide a trial court's determination as to whether to apply judicial estoppel:

(1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether acceptance of the later inconsistent position would create the perception that either the first or the second court was misled, and (3) whether the assertion of the inconsistent position would create an unfair advantage for the asserting party or an unfair detriment to the opposing party.

Chonah v. Coastal Vills. Pollock, LLC, 5 Wn. App. 2d 139, 148, 425 P.3d 895 (2018) (quoting Taylor v. Bell, 185 Wn. App. 270, 282, 340 P.3d 951 (2014)).

"'An appellate court reviewing a summary judgment places itself in the position of the trial court and considers the facts in a light most favorable to the nonmoving party.'" Chonah, 5 Wn. App. 2d at 147 (quoting Cunningham v. Reliable Concrete Pumping, Inc., 126 Wn. App. 222, 227, 108 P.3d 147 (2005)). A trial court's decision on the application of judicial estoppel is reviewed for abuse of discretion. Chonah, 5 Wn. App. 2d at 147. "'A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds.'" Chonah, 5 Wn. App. 2d at 147 (internal quotation marks omitted) (quoting Skinner v. Holgate, 141 Wn. App. 840, 849, 173 P.3d 300 (2007)).

### 1 Prior Inconsistent Position

The first issue is whether Stewart's later position is clearly inconsistent with her first position. "The failure to disclose a cause of action in a bankruptcy schedule constitutes an inconsistent prior position if the debtor later seeks recovery from that cause of action." Urbick v. Spencer Law Firm, LLC, 192 Wn. App. 483, 488, 367 P.3d 1103 (2016). A debtor has the opportunity to disclose all assets and liabilities in

schedules, amendments, and in the meeting of the creditors, and the debtor makes the statements in those pleadings and meeting under penalty of perjury. Urbick, 192 Wn. App. at 488.

Here, Stewart affirmatively answered under penalty of perjury that she did not have any claims against third parties, even if she had not yet filed the claims. This is clearly inconsistent with her later position when she filed the lawsuit against Seattle Children's while the bankruptcy was still pending. Therefore, this element is met.

2    Judicial Acceptance

The second factor is whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.

Generally, if a bankruptcy court grants discharge, then the court accepts the debtor's position for purposes of judicial estoppel. Urbick, 192 Wn. App. at 488-89. Cunningham is instructive. There, the plaintiff filed for chapter 7 bankruptcy but failed to disclose in the schedules that there was a third-party personal injury claim arising out of a workplace injury. Cunningham, 126 Wn. App. at 225. After discharge and the closing of the bankruptcy case, the plaintiff sued for the workplace injury. Cunningham, 126 Wn. App. at 225. After this claim was filed, the trustee from the bankruptcy reopened the bankruptcy case. Cunningham, 126 Wn. App. at 226. The defendants successfully moved for summary judgment arguing that judicial estoppel barred the claim. Cunningham, 126 Wn. App. at 226.

On appeal, this court affirmed. The court explained that the bankruptcy court implicitly accepted the plaintiff's position that there were no third-party claims when it

-5-

discharged the debt and closed the case.  Cunningham, 126 Wn. App. at 233.  The court explained that the bankruptcy court's discharge of the plaintiff's debts was an implicit acceptance of his position that he had no assets that could be liquidated for the benefit of his creditors.  Cunningham, 126 Wn. App. at 233.  The court also explained that the reopening of the bankruptcy did not change the analysis because the plaintiff still received the complete benefit of discharge of the debts.  Cunningham, 126 Wn. App. at 233.

Stewart received the discharge of her debts on January 27, 2025, and the case closed on January 30, 2025.  Stewart filed her lawsuit against Seattle Children's on January 16, 2025.  After she filed her lawsuit, Stewart did not amend her bankruptcy schedules before the discharge or the closure of her bankruptcy case.  And like Cunningham, it does not matter that she later attempted to reopen the bankruptcy case because she had already received the benefit of the discharge.  For those reasons, the second element is met.

### 3      Unfair Advantage

The third factor is whether the assertion of the inconsistent position would create an unfair advantage for the asserting party or an unfair detriment to the opposing party. Here, Stewart received an unfair advantage of receiving a discharge of her debts while filing a lawsuit against Seattle Children's without disclosing the potential asset to creditors.  Stewart knew of this incident and potential lawsuit for at least three years before she filed.  Therefore, she should have been able to disclose it, especially when she listed Seattle Children's as one of her creditors.  She received an unfair advantage by failing to disclose this claim.

For those reasons, Stewart fails to show that the trial court's decision was manifestly unreasonable or based on untenable grounds when it applied the doctrine of judicial estoppel to her claims.

B       Improper Service of Process

Stewart next argues that the trial court erred in concluding that there was insufficient service of process because there was actual notice and extensive participation. We disagree.

"Serving a summons and complaint commences a civil action and establishes a trial court's jurisdiction over the action." Spencer v. Franklin Hills Health-Spokane, LLC, 3 Wn.3d 165, 170, 548 P.3d 193 (2024). "The purpose of service is to provide due process, which requires notice and an opportunity to be heard." Spencer, 3 Wn.3d 1at 170. But actual notice alone is insufficient to show valid service. Gerean v. Martin-Joven, 108 Wn. App. 963, 972, 33 P.3d 427 (2001).

The relevant statute provides that service must be made as follows:

> Service made in the modes provided in this section is personal service. The summons shall be served by delivering a copy thereof . . .
>
>     . . . .
>
>     (9) . . . to the president or other head of the company or corporation, the registered agent, secretary, cashier or managing agent thereof or to the secretary, stenographer or office assistant of the president or other head of the company or corporation, registered agent, secretary, cashier or managing agent.

Former RCW 4.28.080(9) (2015). When a defendant challenges service of process, the plaintiff has the initial burden to establish a prima facie case of proper service. Northwick v. Long, 192 Wn. App. 256, 261, 364 P.3d 1067 (2015). Then the

challenging party must present clear and convincing evidence that service was improper.  Northwick, 192 Wn. App. at 261.

Further, personal service statutes require substantial compliance.  Martin v. Triol, 121 Wn.2d 135, 144, 847 P.2d 471 (1993).  "'Substantial compliance has been defined as actual compliance in respect to the substance essential to every reasonable objective of [a] statute.'"  City of Seattle v. Pub. Emp't Rels. Comm'n, 116 Wn.2d 923, 928, 809 P.2d 1377 (1991) (alteration in original) (quoting In re Habeas Corpus of Santore, 28 Wn. App. 319, 327, 623 P.2d 702 (1981)).  "In the cases where substantial compliance has been found, there has been actual compliance with the statute, albeit procedurally faulty."  City of Seattle, 116 Wn.2d at 928.

Stewart does not meet her burden to prove that she was authorized to serve Seattle Children's via certified mail.  For a party to be authorized to serve process via certified mail under RCW 23.95.450, the party must present facts establishing that the represented entity either "ceases to have a registered agent, or [that] its registered agent cannot with reasonable diligence be served."  RCW 23.95.450(2).  Stewart does not establish either of these.  First, Seattle Children's does have a registered agent.  In fact, Stewart mailed the complaint to the correct registered agent.  Second, Stewart fails to show that she could not personally serve Seattle Children's registered agent with reasonable diligence.  She did not comply with the relevant statutes.  Therefore, the trial court did not err in dismissing the claims for insufficient service of process.

We affirm.

WE CONCUR:

_____Mann, J._____

_Feldman, J._____

_____, ACJ